(No. 83414.—

*In re* MARRIAGE OF PAULA B. MINEAR, Appellee, and ROBERT E. MINEAR, Appellant.

*Opinion filed March 26, 1998.*

H. Kent Heller and David Stevens, of Heller, Holmes & Associates, P.C., of Mattoon, for appellant.

Mark T. Petty, of Arcola, for appellee.

JUSTICE MILLER delivered the opinion of the court:

Paula B. Minear filed in the circuit court of Douglas County a petition for dissolution of her marriage to Robert E. Minear. In October 1994, the trial judge found that grounds for dissolution existed. In July 1996, the judge filed a memorandum opinion resolving issues of child custody and visitation, child support, maintenance, property distribution, and attorney fees.

Robert appealed and argued that the trial judge

abused his discretion in deciding issues relating to maintenance, child support, property distribution, and attorney fees. The appellate court, with one judge dissenting, affirmed. 287 Ill. App. 3d 1073. We granted leave to appeal (166 Ill. 2d R. 315) and now affirm the judgment of the appellate court.

## BACKGROUND

Paula and Robert were married in 1975. The couple's daughter, Melissa, was born in 1978 and their son, Michael, was born in 1981. Paula and Robert own a home and a business. The business is a service station operated by Robert. Once the children reached school age, Paula returned to work as a medical receptionist.

In February 1994, Paula filed a petition for dissolution of marriage under the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/101 *et seq.* (West 1994)). In October 1994, the judge found grounds for dissolution of the marriage. In December 1994, a hearing was held on Paula's petition for temporary relief. See 750 ILCS 5/501 (West 1994). Following the hearing, the judge entered orders which: (1) granted temporary custody of the children to Robert, subject to visitation by Paula; (2) awarded temporary possession of the marital residence to Robert; (3) directed Robert to pay temporary maintenance to Paula in the amount of $300 per month; and (4) directed Robert to pay Paula $5,000 so that Paula could rent and furnish an apartment.

In November 1995, April 1996, and May 1996, hearings were held regarding marital property distribution, child custody and support, maintenance, and attorney fees. In order to divide the marital property, evidence was presented regarding the property owned by Paula and Robert. The marital residence was appraised at $95,000 subject to an outstanding indebtedness of $46,000. The service station was appraised at $165,000

with no outstanding indebtedness. No part of the station's value was attributed to goodwill. However, due to leaking underground storage tanks, the service station is subject to an estimated liability of $84,630 in future environmental cleanup costs. Evidence was also presented regarding the value of the furnishings found in the marital residence; the equipment found in the service station; the vehicles owned by Paula and Robert; and the checking, savings, investment, and retirement accounts held by Paula and Robert.

In addition, the judge heard evidence regarding Paula's and Robert's earning capacity. Paula works as a medical receptionist and the judge found that Paula's net monthly income is $1,086. The judge calculated this amount from figures found on Paula's direct deposit payroll statement. Robert operates the service station and the judge found that Robert's net monthly income is $3,063. The judge calculated this amount from the service station's balance sheet and income statement prepared by Robert's accountant for the first nine months of 1995.

In order to find Robert's net monthly income, the judge subtracted from total income ($688,162) the station's total cost of sales ($543,558) and total expenses ($121,617). The result ($22,987) represented Robert's income for the first nine months of 1995. The judge added back Robert's depreciation expense ($10,874) because depreciation did not represent an out-of-pocket expense for Robert. The judge then subtracted income taxes ($6,292) and divided by nine to arrive at Robert's net monthly income ($3,063).

The judge heard further evidence on child custody, child support, and maintenance so that the previously entered temporary orders could be adjusted or made permanent. Following the conclusion of these hearings, the judge issued a memorandum opinion. The judge

granted custody of Michael to Robert. Because Melissa was 12 days away from majority at the time, the judge did not enter a custody order as to Melissa. No issues regarding custody or visitation are raised in this appeal.

The judge divided the marital property equally between Paula and Robert. The judge awarded to Paula the marital residence (net value of $49,000), certain cash and investment accounts ($24,813), household furniture ($10,025), a note receivable ($4,000), an automobile (value undetermined), and an equalizing payment from Robert ($10,615) for a total marital property award of $98,453. The judge awarded to Robert the service station (net value of $80,370), certain cash and investment accounts ($17,732), household furniture (value undetermined), and various other property ($10,965). After subtracting the equalizing payment made to Paula, Robert was left with a total marital property award of $98,453.

The judge ordered Robert to pay Paula maintenance in the amount of $500 per month for an indefinite period of time. The judge considered several statutory factors (see 750 ILCS 5/504 (West 1994)) as well as the relative incomes of Paula and Robert. The judge found that Paula's earnings represent 26% of the couple's net monthly income and that Robert's earnings represent 74% of the income. Based on this disparity, the judge found that Paula "cannot maintain herself anywhere near the standard of living enjoyed by the parties during the course of their marriage without indefinite maintenance from [Robert]." The judge stated, however, that "said maintenance may be modified or terminated in accordance with the statutory factors."

The judge did not award child support to Robert. In making this determination, the judge referred to the net monthly incomes of Paula and Robert. The judge then stated: "That considering the comparison of each of the

party's income and taking into consideration the amount of maintenance [Robert] is hereinafter ordered to pay unto [Paula], [Robert] has a net income in excess of that of [Paula] and is not in need of child support from [Paula]."

The judge awarded Paula a portion of her attorney fees to be paid for by Robert. The judge found that Paula incurred $3,700 in attorney fees and costs. In light of the relative financial positions of Paula and Robert, the judge ordered Robert to pay 74% of Paula's attorney fees ($2,731). This percentage represents Robert's portion of the couple's net monthly income prior to any maintenance payments made to Paula.

Robert filed a notice of appeal. In response, Paula filed a motion requesting that Robert pay a portion of her appellate attorney fees. Paula's attorney estimated that it would cost $3,000 to defend an appeal. Paula requested that Robert pay $2,000 of her anticipated fees. The judge noted that the Act provides for an award of attorney fees when fees are expected to be incurred in the defense of an appeal. See 750 ILCS 5/508(a)(3) (West 1994). Because of Paula's and Robert's relative monthly incomes, the judge found Paula's request reasonable and ordered Robert to pay $2,000 as prospective attorney fees.

On appeal, Robert's primary contention was that the trial judge erred in failing to deduct Robert's depreciation expense from his income in arriving at a net monthly income figure. According to Robert, this alleged error affected the judge's findings regarding maintenance, child support, and attorney fees and amounted to an abuse of discretion. Robert also argued that the judge abused his discretion in dividing the marital property.

The appellate court affirmed. 287 Ill. App. 3d 1073. The court found that the trial judge did not abuse his discretion in dividing the marital property, awarding

maintenance to Paula, refusing Robert's request for child support, and ordering Robert to pay a portion of Paula's attorney fees. In addition, the court addressed Robert's contention that his depreciation expense should have been deducted from his net income. The court found that section 505(a)(3)(h) of the Act (750 ILCS 5/505(a)(3)(h) (West 1994)) does not provide for depreciation to be deducted from net income, and that in any event, Robert failed to present sufficient evidence to justify such a deduction.

## DISCUSSION

As was true in the appellate court, Robert's primary argument here is that the trial judge abused his discretion in failing to deduct a depreciation expense in calculating Robert's net income. To support his claim, Robert relies on two appellate court cases which find that a depreciation expense may be deducted from net income under section 505(a)(3)(h) in determining a child support obligor's level of support if the expense is reasonable and necessary for the production of income. See *Posey v. Tate*, 275 Ill. App. 3d 822, 826-28 (1st Dist. 1995); *In re Marriage of Davis*, 287 Ill. App. 3d 846, 852-54 (5th Dist. 1997); 750 ILCS 5/505(a)(3)(h) (West 1994).

Paula argues, however, that the appellate court correctly determined that depreciation is not an "[e]xpenditure[ ] for repayment of debts" and thus cannot be deducted from net income as defined in section 505(a)(3)(h). 750 ILCS 5/505(a)(3)(h) (West 1994). As did the appellate court in this case, Paula relies on *Gay v. Dunlap*, 279 Ill. App. 3d 140, 145-48 (4th Dist. 1996). *Gay* found that entertainment, meal, and car-related expenses cannot be deducted from a child support obligor's net income under subsection (a)(3)(h) because these business expenses "are not expenditures *for repayment of debts*." (Emphasis in original.) *Gay*, 279 Ill. App. 3d at 145; see also 750 ILCS 5/505(a)(3)(h) (West 1994).

A review of the record indicates that the judge calculated Robert's net income from the service station's balance sheet and income statement prepared by Robert's accountant for the first nine months of 1995. In his testimony, Robert never explained the basis for the $10,874 depreciation expense found on this financial document. In fact, Robert testified that he did not know how to read a financial statement. Also, Robert's accountant did not testify at the hearings. No other testimony or documents contained in the record explain the basis for this depreciation expense.

Without deciding whether a depreciation expense may in all cases be excluded from consideration in determining an individual's available income, we find that Robert has failed to present evidence that would, under the rule he proposes, warrant exclusion of that expense. Because no evidence was offered to explain the basis for the $10,874 depreciation expense noted on the balance sheet and income statement, we cannot say that the judge in any event abused his discretion in refusing to deduct this expense in determining Robert's available income. *Cf. In re Marriage of McDonald*, 113 Ill. App. 3d 116, 118-19 (1983) (stating that without evidence to establish the disposition of funds generated through depreciation, a husband failed to show an inability to pay maintenance).

Robert further argues that the trial judge abused his discretion in awarding Paula $500 per month in maintenance. In awarding maintenance to Paula, Robert argues that the judge failed to consider: that Paula was awarded one half of the marital property; that Paula requires less income to support a one-person household; the true standard of living established during the marriage; and that Robert could not afford to pay $500 in maintenance per month.

Each of Robert's points corresponds to a factor listed

in section 504(a) for the court to consider in awarding maintenance. See 750 ILCS 5/504(a)(1) (income and property of each party, including marital property apportionment); (a)(2) (needs of each party); (a)(3) (present and future earning capacity of each party); (a)(6) (standard of living established during the marriage) (West 1994). The judge stated in both his memorandum opinion and judgment of dissolution of marriage that he considered the statutory factors. The judge also found that Paula could not "maintain herself anywhere near the standard of living enjoyed by the parties during the course of their marriage without maintenance."

In light of the statutory factors listed in section 504(a) and the judge's statement that he considered these factors, we are unable to say that the judge failed to consider the points identified by Robert. In addition, an award of maintenance is within the discretion of the trial court and will not be reversed on appeal unless the award constitutes an abuse of discretion or is against the manifest weight of the evidence. *In re Marriage of Phillips*, 244 Ill. App. 3d 577, 593 (1993); see also *Hoffmann v. Hoffmann*, 40 Ill. 2d 344, 349 (1968) (discussing the abuse of discretion standard in regard to alimony). We cannot say that the trial judge's award of maintenance in this case was an abuse of discretion.

Robert next argues that the trial judge abused his discretion in awarding Paula a portion of her trial court attorney fees ($2,731) and a portion of her prospective appellate attorney fees ($2,000). Robert claims the judge never found that Paula was unable to pay her attorney fees and also never found that Robert could afford to pay Paula's fees.

Section 508(a)(3) of the Act provides that a court, after considering the financial resources of the parties, may order an award of attorney fees, including fees expected to be incurred in the defense of an appeal. See

750 ILCS 5/508(a)(3) (West 1994). This court has previously stated:

> "The awarding of attorney fees and the proportion to be paid are within the sound discretion of the trial court and will not be disturbed on appeal, absent an abuse of discretion. [Citations.] The propriety of an award of attorney fees is dependent upon a showing by the party seeking them of an inability to pay and a demonstration of the ability of the other spouse to do so. [Citations.]" *In re Marriage of Bussey*, 108 Ill. 2d 286, 299-300 (1985).

A review of the record shows that Paula has a net monthly income of $1,086 and that Robert has a net monthly income of $3,063. After considering the $500-per-month maintenance payment made to Paula, Paula's income is $1,586 per month and Robert's income is $2,563 per month. Robert has custody of Michael and receives no child support. Although some evidence of the parties' expenses appears in the record for the time period prior to their separation, the record contains only brief mention of the parties' expenses following their separation.

For example, Paula testified during a hearing on her motion for prospective appellate attorney fees that she does not have the money to pay her legal bills and that she cannot afford to continue paying $675 mortgage payments. On cross-examination, Paula stated that she purchased new carpeting and a couch for the former marital residence where she now lives. No other evidence establishes Paula's post-separation expenses.

At a hearing on Paula's petition for adjudication of indirect civil contempt due to Robert's failure to make certain temporary maintenance payments, Robert testified that he spent more than $1,600 per month in running his household. Other than a few references to property taxes and doctor bills, no other evidence regarding Robert's post-separation expenses is contained in the record.

Thus, in awarding Paula attorney fees, the judge had before him evidence of the parties' incomes and expenses. At the conclusion of the dissolution proceedings, the judge awarded Paula $2,731 (or 74%) of her $3,700 trial court attorney fees. This percentage represents Robert's proportional share of the couple's net income prior to any maintenance payments made to Paula. In ordering Robert to pay these fees, the judge stated that he "[c]onsider[ed] the relative financial circumstances of the parties and all their income."

Following a subsequent hearing on Paula's motion for prospective appellate attorney fees, the judge awarded Paula $2,000 (or 66%) of her estimated $3,000 in prospective fees. This percentage approximates Robert's proportional share of the couple's net income (62%) after considering maintenance payments made to Paula. In ordering Robert to pay these fees, the judge stated that Paula "lacks the financial resources to defend the appeal brought herein by [Robert]."

It is apparent from the judge's comments that he found that Paula was unable to pay for all of her prospective appellate attorney fees. The judge's comments also indicate that he was aware of Paula's and Robert's financial situations, including their relative incomes and abilities to pay attorney fees. Given these circumstances, and the fact that the attorney fee awards proportionally reflect the parties' incomes, we cannot say that the judge abused his discretion in awarding Paula a portion of her attorney fees.

Robert additionally argues that the trial judge abused his discretion in distributing the marital property. Robert claims the judge "double counted" the service station by awarding it to Robert as marital property and then considering it as the source of Robert's income. Although goodwill was not considered in the appraisal of the service station, Robert relies on *In re Mar-*

*riage of Talty*, 166 Ill. 2d 232, 236-40 (1995), and *In re Marriage of Zells*, 143 Ill. 2d 251, 254-56 (1991), which discuss the goodwill value of a business and the potential for double counting this asset.

Paula argues, however, that Robert has waived the double-counting issue by failing to raise it in either the trial or appellate courts. Paula notes that this issue was raised for the first time during oral argument in the appellate court by Justice Cook and was addressed only in Justice Cook's dissent. Even if the issue is not waived, Paula contends that Robert's reliance on *Talty* and *Zells* is misplaced because goodwill has never been an issue in this case.

In his reply brief, Robert acknowledges that the double-counting issue was raised for the first time in the appellate court during oral argument and that he has never raised a goodwill issue. Notwithstanding these facts, Robert argues that it is important for this court to determine the scope of double counting in Illinois for reasons of public policy. We disagree.

Issues not raised in the trial court are waived and cannot be argued for the first time on appeal. *In re Marriage of Rodriguez*, 131 Ill. 2d 273, 279 (1989). "An exception to this waiver rule is found when an issue of public importance, decided by the appellate court but not by the trial court, is presented. Under these circumstances, this court may consider the issue. [Citation.]" *Rodriguez*, 131 Ill. 2d at 279. In the case before us, a double-counting issue has not been decided by the appellate court. Instead, only Justice Cook in his dissent discusses this issue. See 287 Ill. App. 3d at 1087 (Cook, J., dissenting). Also, in *Talty* and *Zells*, this court addressed the problems regarding the double counting of goodwill. Thus, the exception to the waiver rule identified in *Rodriguez* does not apply here and the issue is waived.

Robert's final argument is that the trial judge abused his discretion in failing to award Robert 20% of Paula's net monthly income ($217) as child support. See 750 ILCS 5/505(a)(1) (West 1994) (setting 20% as the level of support for one child). Robert argues that if the judge wished to deviate from the statutory guidelines and not require Paula to pay child support, the judge should have stated a guideline figure and then explained the reason for any variance with an express finding. See 750 ILCS 5/505(a)(2) (West 1994) ("If the court deviates from the guidelines, the court's finding shall state the amount of support that would have been required under the guidelines, if determinable. The court shall include the reason or reasons for the variance from the guidelines").

Paula, however, argues that Robert has waived the issue of the judge's failure to make express findings under section 505(a) of the Act by not raising this issue in the trial court. See *In re Marriage of Kern*, 245 Ill. App. 3d 575, 577 (1993); *In re Marriage of Harper*, 191 Ill. App. 3d 245, 246 (1989). In the alternative, Paula claims that the judge made sufficient findings in his memorandum opinion as to why he deviated from the statutory guidelines. Paula acknowledges that the judge did not state the amount of support that would have been required under the guidelines. Nevertheless, Paula contends that this oversight should not constitute reversible error when the figure is easily calculated from the judge's other findings—20% of Paula's net monthly income of $1,086 yields a $217 child support figure.

We agree with Paula. Paragraph 7 of the judgment of dissolution of marriage states:

"The court having considered the net income of the parties and found that [Paula's] monthly, adjusted net income is $1,086.26 and [Robert's] monthly adjusted net income is $3,063.21 and comparing each of the parties' income, taking into consideration the amount of maintenance [Robert] is hereby ordered to pay to [Paula], [Robert] has a net

income in excess of that of [Paula] and is not in need of child support from [Paula] by reason thereof."

These findings explain why the judge did not order Paula to pay child support to Robert. Thus, "the reason or reasons for the variance from the guidelines" (750 ILCS 5/505(a)(2) (West 1994)) is included in the judge's findings.

The judgment of dissolution of marriage also contains Paula's net monthly income from which the 20% guideline support figure can easily be calculated. Although we believe the better practice is for a trial judge to calculate the amount of support that would have been required under the guidelines, as is provided for in section 505(a)(2), we cannot say that the judge's failure to do so in this case amounted to reversible error. In light of the judge's findings and the relative financial circumstances of Paula and Robert, we find no abuse of discretion in the judge's refusal to award Robert child support. Because we find that the judge did not abuse his discretion, we do not address the waiver argument advanced by Paula.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the appellate court.

*Affirmed.*