TAMRA S. SLAGEL, Plaintiff-Appellee, v. DALE WESSELS, Defendant-Appellant.

Fourth District   No. 4—99—0926

Argued May 17, 2000.—Opinion filed June 27, 2000.

Gordon M. Kinate (argued), of Kinate & Morgan, P.C., of Fairbury, for appellant.

Ronald K. Fellheimer (argued), of Fellheimer Law Firm, of Pontiac, for appellee.

PRESIDING JUSTICE COOK delivered the opinion of the court:

Plaintiff Tamra S. Slagel had three children by her marriage. On the death of her husband, Slagel received life insurance proceeds in the amount of $215,341.76, which she invested.

Sometime later, Slagel began a relationship with defendant, Dale Wessels. As a result of that relationship, two children were born. This litigation began in 1995, when Slagel filed a petition to determine the existence of a father-child relationship between Wessels and the two children. Custody of the two children was originally awarded to Slagel, and Wessels was ordered to pay child support.

On July 30, 1997, the parties entered into an equal time joint-custody agreement, which provided that the children would reside with Wessels for a portion of each week and then with Slagel for the remainder of the week. Under the agreement, beginning January 1, 1999, the children were to reside with Wessels for six months, and then with Slagel for the next six months. Under the agreement, Wessels was required to pay 25% of his net income as child support while the children were with Slagel, and Slagel was required to pay 25% of her net income while the children were with Wessels. "To accomplish that, the parties shall calculate the net difference on a calendar year basis, and the parent having the greater child support obligation shall pay to the other the net difference, on a bi[ ]weekly basis."

In an order entered November 3, 1999, the trial court determined that Wessels had biweekly net take-home pay of $1,312.50 ($34,125

annually), and his biweekly child support at the 25% level would be $328 ($8,528 annually). Slagel received a social security payment of $536 per month ($6,432 annually) and had annual income of approximately $4,000. She also received income on the $215,341.76 of investments, estimated to be about $12,920.51 annually. Although Slagel "reports all of the income from the investments on her income tax return, and the investments are titled in [Slagel's] name alone," the trial court concluded that Slagel was receiving only one-fourth of the investment income under section 505(a)(3) of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act), which defines net income as "the total of all income from all sources, minus" certain specified deductions. 750 ILCS 5/505(a)(3) (West 1998).

The trial court based this conclusion on Slagel's testimony, which it summarized as follows:

"that she views the investments as being one fourth hers and that with respect to the other three-fourths, [Slagel] testified that it was her intention to hold same for the children's education. [Slagel] testified that she used the income from the investment to make the house payment and to pay real estate taxes, and that on one occasion she used principal to purchase a vehicle, [Slagel] testifying that all of said expenditures she viewed as benefitting both her and the children."

The trial court concluded that Slagel's annual net income, consisting of the social security income, the $4,000 in earnings, and one-fourth of the income from investments, was $13,622; 25% of that amount was $3,405; and the annual difference in support to be paid by Wessels to Slagel was $5,113. Wessels was accordingly ordered to pay child support of $196 biweekly for the entire year.

■ Wessels appeals, arguing that the trial court abused its discretion in not taking into consideration Slagel's income from all sources in setting child support. The standard of review for a current child support award is whether the award is an abuse of discretion or the factual predicate for the decision is against the manifest weight of the evidence. *In re Parentage of Janssen*, 292 Ill. App. 3d 219, 223, 685 N.E.2d 16, 19 (1997). The trial court has wide discretion in awarding child support, and its decision will not be reversed by a court of review absent an abuse of discretion. *In re Marriage of Potts*, 297 Ill. App. 3d 110, 114, 696 N.E.2d 1263, 1266 (1998).

■ Section 505 of the Dissolution Act (750 ILCS 5/505 (West 1998)) addresses issues of child support. A parent owing a duty of support is required to "pay an amount reasonable and necessary" for the support of that parent's children. 750 ILCS 5/505(a) (West 1998). Section 505 establishes guidelines for the minimum amount of support to be

paid. The setting of child support is, however, a judicial function. The court may deviate from the guidelines, but if it does so it must make a finding "that application of the guidelines would be inappropriate" after considering relevant factors, including those listed in section 505. 750 ILCS 5/505(a)(2) (West 1998). A court that deviates from the guidelines must state reasons for the variance and must state the amount that would have been required under the guidelines.

■ The section 505 guidelines are expressed as a percentage of the supporting party's net income. "Net income" is defined as "the total of all income from all sources," minus listed deductions for income taxes, social security (FICA) payments, mandatory retirement contributions, union dues, health insurance premiums, and certain reasonable and necessary expenses for the production of income. 750 ILCS 5/505(a)(3) (West 1998). The section seems designed to answer the questions that arise with a parent-employee who receives a paycheck. There is also a listed deduction for "[p]rior obligations of support or maintenance actually paid pursuant to a court order." 750 ILCS 5/505(a)(3)(g) (West 1998).

■ The guidelines are a useful method of insuring that child support is set in an amount that is reasonable and necessary. Section 505, however, does not provide comprehensive rules for every conceivable situation. It is recognized that there are times when it will be improper for the trial court to apply the guidelines. For example, in "split custody" cases, where each parent is the custodian of at least one of the parties' children, section 505's guidelines are not necessarily applicable. *In re Marriage of Demattia*, 302 Ill. App. 3d 390, 393, 706 N.E.2d 67, 69 (1999). If a man has three children by three different marriages, does he pay child support at the rate of 60% (3 x 20%) or at the rate of 32%? 750 ILCS 5/505(a)(1) (West 1998). The guidelines do not provide an answer. The guideline amounts also have some inadequacies where the noncustodian is a high-income earner or a low-income earner. *In re Marriage of Kern*, 245 Ill. App. 3d 575, 579, 615 N.E.2d 402, 405 (1993).

■ Even the determination of "net income" is not always a straightforward, mechanical process. Cf. *In re Marriage of Boland*, 308 Ill. App. 3d 1063, 1067, 721 N.E.2d 815, 818 (1999). While tax law principles may be useful in determining what net income is available for child support, they are not controlling. *Ivanyi v. Granoff*, 171 Ill. App. 3d 411, 421-22, 526 N.E.2d 189, 197 (1988) (refusing to consider items that defendant was required to report on his tax return but did not in fact receive). Section 505 specifically recognizes that special circumstances may make it difficult to determine net income: "If the net income cannot be determined because of default or any other reason,

the court shall order support in an amount considered reasonable in the particular case." 750 ILCS 5/505(a)(5) (West 1998).

■ The circumstances of the present case present another situation, similar to the "split custody" situation mentioned above, where the guidelines should not be mechanically applied. Slagel has three children by a marriage that ended with the death of her husband, and the needs of those three children must be met from the husband's life insurance (and the social security benefits received on account of his death). Wessels' argument that interest earned on the life insurance payments must be included in Slagel's net income in its entirety would ignore the needs of the three children of the marriage.

One could argue that the legislature dealt with this situation when it provided a deduction from "net income" for "[p]rior obligations of support or maintenance actually paid pursuant to a court order." 750 ILCS 5/505(a)(3)(g) (West 1998). We disagree. Wessels argues that there is no court order here. The "court order" requirement was designed to avoid the situation where the individual owing a duty of child support sought to avoid that obligation by asserting the payment of large amounts to a prior family that may not in fact have been made or that may have been made in excess of the needs of the prior family. There is no doubt that Slagel is the sole support for her three children, and she should be given some consideration for the payments that she is required to make on that account.

Even ignoring the "court order" requirement, section 505(a)(3)(g) provides little assistance in resolving this case. The trial court properly recognized that the income from the investments was not entirely Slagel's, even though she paid tax on it. The three Slagel children had at least an informal interest in the investment income. The trial court acted within its discretion in allocating the investment income three-fourths to the Slagel children, and one-fourth to Slagel. The trial court was not required, in this situation, to include all the investment income in Slagel's net income, with a deduction for "[p]rior obligations of support or maintenance actually paid," whether or not pursuant to a court order. 750 ILCS 5/505(a)(3)(g) (West 1998). (It does appear that the trial court's method for computing Slagel's child support approximates that result.)

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

McCULLOUGH and GARMAN, JJ., concur.