*In re* MARRIAGE OF GRANT A. BAYLOR, Petitioner-Appellant, and KIM K. BAYLOR, Respondent-Appellee.

Fourth District    No. 4—00—0983

Opinion filed August 3, 2001.

214

COOK, J., dissenting.

Charles S. Watson, of Watson Law Offices, of Springfield, for appellant.

Walker R. Filbert, of Feldman, Wasser, Draper & Benson, of Springfield, for appellee.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In September 1995, the trial court entered a judgment dissolving

the marriage between petitioner, Grant A. Baylor, and respondent, Kim K. Baylor, and incorporating the parties' marital and joint-parenting agreements. Those agreements provided that (1) the parties would share joint custody of their child, Blake (born November 19, 1993); (2) Blake would live with Grant; (3) Kim would have reasonable visitation; and (4) Kim was financially able to pay child support. (The record does not show that the dissolution judgment set a child support amount.)

In November 1999, Grant filed a petition requesting that the trial court (1) order Kim to pay reasonable child support and (2) terminate joint custody. In March 2000, Kim filed a counterpetition seeking custody of Blake and child support. Following a June 2000 hearing, the court (1) denied Grant's petition to terminate joint custody; (2) denied Kim's petition to change custody; (3) modified Kim's visitation schedule; and (4) ordered Kim to pay $350 per month in child support. In October 2000, Grant filed a motion to reconsider, which the court later denied.

Grant appeals, arguing only that the trial court erred by failing to include Kim's military allowances in calculating her net income to determine her child support obligation. We reverse and remand with directions.

## I. BACKGROUND

The evidence presented at the June 2000 hearing showed the following. Kim was a noncommissioned officer in the United States Air Force. In addition to her gross annual base pay, which totaled $21,960, Kim earned approximately $2,678 annually from nonmilitary part-time work. She also received certain military allowances to supplement her off-base housing and other living expenses. Those military allowances, which totaled $9,876.92 annually, were not subject to federal income tax.

Following the hearing, the trial court took the matter under advisement. In September 2000, the court entered an order providing, in pertinent part, as follows:

"Child support should be set at $350 per month. This amount slightly exceeds the guideline amount [(750 ILCS 5/505(a)(1) (West Supp. 1999) (effective June 1, 2000))] based upon Kim Baylor's net income of $20,000 per year from military pay and outside employment."

In October 2000, Grant filed a motion to reconsider, arguing, *inter alia*, that (1) in *In re Marriage of McGowan*, 265 Ill. App. 3d 976, 980, 638 N.E.2d 695, 698 (1994), the First District Appellate Court held that military allowances should be included in calculating a noncustodial parent's net income for child-support purposes; and (2) the trial

court should have included Kim's military allowances in its calculation of her net income. Following a hearing, the court denied Grant's motion, stating, in pertinent part, as follows:

> "With respect to the net income, [Grant's counsel] has raised a very good point. However, I just don't believe it's a point that requires me to get into the types of calculations that I think are far beyond my abilities insofar as making those determinations of net income and things of that nature."

This appeal followed.

## II. ANALYSIS

### A. Kim's Motion for Attorney Fees

●1 Initially, we address Kim's motion requesting that we award her reasonable attorney fees incurred for this appeal, which was taken with this case. This court is without jurisdiction to award attorney fees. *In re Marriage of Emery*, 179 Ill. App. 3d 744, 752, 534 N.E.2d 1014, 1019 (1989); *In re Marriage of Stockton*, 169 Ill. App. 3d 318, 329, 523 N.E.2d 573, 581 (1988). Kim should have addressed the issue of appellate attorney fees to the trial court. See *In re Marriage of Talty*, 166 Ill. 2d 232, 240, 652 N.E.2d 330, 334 (1995) (section 508(a)(3) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/508(a)(3) (West 1998)) "expressly authorizes a circuit court to make a prospective award of attorney fees to a party for the defense of an appeal").

### B. The Trial Court's Calculation of Kim's Net Income

Grant argues that the trial court erred by failing to include Kim's military allowances in calculating her net income to determine her child support obligation. We agree.

●2 This issue involves the application of law to undisputed facts; therefore, our review is *de novo*. See *Gay v. Dunlap*, 279 Ill. App. 3d 140, 145, 664 N.E.2d 88, 92 (1996) (reviewing *de novo* whether the trial court should have allowed certain deductions from the noncustodial parent's gross income to determine his child support obligation).

●3 The starting point for determining a child support award is to arrive at the noncustodial parent's net income. 750 ILCS 5/505 (West Supp. 1999) (effective June 1, 2000); *In re Marriage of Benish*, 273 Ill. App. 3d 955, 958, 653 N.E.2d 55, 57 (1995). Section 505(a)(3) of the Act defines "net income" as "the total of all income from all sources," minus the following deductions: (1) federal income tax; (2) state income tax; (3) social security payments; (4) mandatory retirement contributions required by law or as a condition of employment; (5) union dues; (6) dependent and individual health insurance premiums;

(7) prior child support obligations or maintenance actually paid under a court order; and (8) "[e]xpenditures for repayment of debts that represent reasonable and necessary expenses for the production of income, medical expenditures necessary to preserve life or health, reasonable expenditures for the benefit of the child and the other parent, exclusive of gifts." 750 ILCS 5/505(a)(3) (West Supp. 1999) (effective June 1, 2000).

●4 In *McGowan*, 265 Ill. App. 3d at 978, 638 N.E.2d at 697, the First District Appellate Court held that the plain, broad language of section 505 of the Act "must be given effect to include military allowances in the computation of child support." In so holding, the *McGowan* court reasoned as follows: (1) the exemption of military allowances from federal income tax was not sufficient to shield the allowances from inclusion in a party's net income; (2) whether military allowances "can be reached by garnishment is also not appropriate in considering what is included in the child support formula" (see *Rose v. Rose*, 481 U.S. 619, 635, 95 L. Ed. 2d 599, 614, 107 S. Ct. 2029, 2039 (1987) ("while it may be true that [veterans' disability benefits] are exempt from garnishment or attachment while in the hands of the [a]dministrator, we are not persuaded that once these funds are delivered to the veteran a state court cannot require that veteran to use them to satisfy an order of child support"); and (3) if the legislature had intended to define income for child support purposes in a manner parallel to the income tax definition, then the language of section 505 of the Act would so indicate. *McGowan*, 265 Ill. App. 3d at 979, 638 N.E.2d at 697-98.

●5 We agree with *McGowan* and thus conclude that the trial court erred by failing to include Kim's military allowances in calculating her net income. Accordingly, we reverse the trial court's child support determination and remand for further proceedings. On remand, the court should do the following, which are the steps that the court should have taken when it first addressed the issue of child support:

(1) Determine Kim's net income, pursuant to section 505(a)(3) of the Act (750 ILCS 5/505(a)(3) (West Supp. 1999) (effective June 1, 2000)), including her military allowances. Although not statutorily required, it would be desirable for the court to state how it calculated net income.

(2) Determine the amount of child support that the statutory guidelines would require Kim to pay. See 750 ILCS 5/505(a)(1) (West Supp. 1999) (effective June 1, 2000) (under the Act, a presumption exists that the stated percentage of the noncustodial parent's income is an appropriate level of support; the guideline amount for one child is 20% of the noncustodial parent's net income).

(3) Indicate either that (a) it is ordering Kim to pay child support based on the statutory guidelines, or (b) after considering relevant factors under section 505(a)(2) of the Act (see 750 ILCS 5/505(a)(2) (West Supp. 1999) (effective June 1, 2000)), including Blake's needs and resources, the needs and resources of both parties, and the standard of living Blake would have enjoyed had the marriage not been dissolved, it is deviating from the statutory guidelines. If the court deviates from the guidelines, it must explicitly state the reasons why it has chosen to do so. 750 ILCS 5/505(a)(2) (West Supp. 1999) (effective June 1, 2000); see *In re Marriage of Stanley*, 279 Ill. App. 3d 1083, 1085, 666 N.E.2d 340, 341 (1996).

As a final matter, we note that the trial court erred by failing to follow *McGowan*. "It is the absolute duty of the circuit court to follow the decisions of the appellate court." *In re A.A.*, 181 Ill. 2d 32, 36, 690 N.E.2d 980, 982 (1998). This was not a case in which the trial court was faced with conflicting decisions from various appellate districts, and, in the absence of controlling authority from its home district, was free to choose between the decisions of other appellate districts. *State Farm Fire & Casualty Co. v. Yapejian*, 152 Ill. 2d 533, 540, 605 N.E.2d 539, 542 (1992). Instead, the only Illinois court to rule upon the issue of whether military allowances should be included in the calculation of net income for child support purposes was the First District Appellate Court in *McGowan*. Accordingly, the trial court should not have disregarded the law of the state as set forth in *McGowan*. See *People v. Harris*, 123 Ill. 2d 113, 128, 526 N.E.2d 335, 340 (1988) ("It is fundamental in Illinois that the decisions of an appellate court are binding precedent on all circuit courts regardless of locale"). If a trial court "entertains genuine doubt about the continued vitality of a reviewing court decision," the proper manner in which to proceed in a complex or protracted case is to rule in accordance with existing law and enter a Rule 304(a) finding (155 Ill. 2d R. 304(a)) or certify the question for interlocutory appeal under Rule 308 (155 Ill. 2d R. 308). *State Farm*, 152 Ill. 2d at 540, 605 N.E.2d at 542. "Because of our system of precedent[,] the circuit court is not, however, free to disregard binding authority." *In re R.C.*, 195 Ill. 2d 291, 298, 745 N.E.2d 1233, 1238 (2001).

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment in part, reverse in part, and remand with directions.

Affirmed in part and reversed in part; cause remanded with directions.

McCULLOUGH, J., concurs.

JUSTICE COOK, dissenting:
I respectfully dissent. I disagree that the trial court erred in awarding child support, and I would affirm. I also disagree that attorney fees may not be awarded after an appeal is resolved and that by failing to seek prospective attorney fees Kim has waived *any* right to seek attorney fees.

In *Talty*, the appellee sought prospective attorney fees from the appellant. *Talty*, 166 Ill. 2d at 235, 652 N.E.2d at 332. The appellant argued that the correct procedure in awarding appellate fees was for the circuit court to make the award after the appeal had been resolved, citing *In re Marriage of Divarco*, 167 Ill. App. 3d 1014, 1022, 522 N.E.2d 619, 624 (1988), *rev'd in part on other grounds, sub nom. Divarco v. Gilleran*, 122 Ill. 2d 572, 528 N.E.2d 986 (1988). *Talty*, 166 Ill. 2d at 241-42, 652 N.E.2d at 335. The supreme court held that prospective fees were possible under a recent amendment authorizing the circuit court to enter an award "for 'the purpose of enabling a party lacking sufficient financial resources to obtain or retain legal representation, expected to be incurred.' " *Talty*, 166 Ill. 2d at 242, 652 N.E.2d at 335, quoting Pub. Act 85—357, § 1, eff. January 1, 1988 (1987 Ill. Laws 1957, 1958). That statutory authorization of prospective fees was intended to expand the power of the court, however, not to eliminate the court's existing power to award fees after an appeal has been resolved. In some cases, a litigant not entitled to the extraordinary remedy of prospective fees might still be entitled to traditional fees after appeal. Prospective fees require speculation; it is only after the appeal has been concluded that fees can be determined with some degree of certainty. A petition for attorney fees pertaining to an appeal can be brought after the appeal, in the trial court. *Stockton*, 169 Ill. App. 3d at 328-29, 523 N.E.2d at 580-81; *Emery*, 179 Ill. App. 3d at 752, 534 N.E.2d at 1019.

I would also note that the language quoted in *Talty* is no longer present in section 508, which was extensively revised in 1997. See D. Hopkins, *"Leveling the Playing Field" in Divorce: Questions and Answers About the New Law*, 85 Ill. B.J. 410 (1997). We should address the new language.

Why should a soldier who lives off base and receives a quarters allowance be considered to have more "net income" for purposes of child support under section 505 than a soldier who lives on base and

has quarters furnished to him directly? *McGowan* recognized that "if the allowance granted is predicated upon the cost of living at the soldier's station, the court can consider whether he or she requires the entire amount to satisfy housing or other needs." *McGowan*, 265 Ill. App. 3d at 978, 638 N.E.2d at 697. That seems to be the case here. I have previously disagreed with the proposition that section 505 provides a clear and certain definition of "net income" which the trial court may uncritically apply to the case before it. *Gay*, 279 Ill. App. 3d at 150-52, 664 N.E.2d at 95-96 (Cook, P.J., dissenting). Looking to facts of *Gay*, was it really the intention of the legislature that a noncustodian might be able to deduct the lease payments for his Mercedes from his "net income," while a soldier must be required to include his quarters allowance in "net income"?

More broadly, despite the existence of the child support guidelines, the setting of child support is a judicial function. *Slagel v. Wessels*, 314 Ill. App. 3d 330, 332-33, 732 N.E.2d 720, 722 (2000). The trial court is required to exercise its best judgment in setting child support, whether the amount set is higher or lower than the guidelines. In the present case the trial court was aware of the quarters allowance. The trial court chose to set child support at an amount "slightly" higher than the guidelines amount, $350 per month. (The trial court found Kim's "net income" to be $20,000 per year, which would produce a child support award of $333 per month.) Whether the quarters allowance was considered to be included in "net income" or not, the trial court concluded that the proper amount of child support was $350 per month. We should respect that decision.

The majority mentions that if a court deviates from the guidelines it must explicitly state the reasons why it has chosen to do so. However, Grant has waived that argument by not raising the issue in the trial court. *In re Marriage of Minear*, 181 Ill. 2d 552, 565, 693 N.E.2d 379, 385 (1998). In any event, it is not necessary that the trial court follow any particular ritual in announcing child support, and the trial court's announcement here was sufficient. See *Minear*, 181 Ill. 2d at 565-66, 693 N.E.2d at 385.