*In re* MARRIAGE OF KELLY GENE WASSOM, Petitioner-Appellant, and RITA IRENE WASSOM, Respondent-Appellee.

Fourth District   No. 4—03—1001

Opinion filed September 15, 2004.

Brian L. McPheters and Christopher L. Tichenor, both of Hatch & McPheters, of Champaign, for appellant.

Scott A. Lerner, of Lerner & Kirchner, of Champaign, for appellee.

JUSTICE MYERSCOUGH delivered the opinion of the court:

On June 23, 1997, petitioner, Kelly Gene Wassom, filed a petition for dissolution of marriage. On August 12, 1997, the trial court entered a dissolution judgment. On August 21, 2003, Kelly filed a petition to modify the judgment of dissolution of marriage. On September 10, 2003, respondent, Rita Irene Wassom, filed a response to Kelly's petition to modify and a petition for adjudication of indirect civil contempt

for the recovery of health insurance premiums and medical payments for their son, Jessie M. Wassom. On October 29, 2003, the court found Kelly was not in indirect civil contempt of court but entered judgment in favor of Rita, ordering Kelly to pay 50% of all health insurance premiums paid by Rita.

Kelly appeals, arguing (1) the court improperly interpreted the marital settlement agreement between the parties as to whether he is responsible for half of the health insurance premiums that Rita pays, and (2) even if the court's decision on this issue is correct, Kelly is entitled to a setoff based on previous child support payments made in excess of the required amount. We affirm.

## I. BACKGROUND

On December 23, 1994, Kelly and Rita married each other for the second time. On June 23, 1997, Kelly filed a petition for dissolution of marriage and for other relief. On October 15, 1998, the trial court entered a judgment of dissolution of marriage. In the judgment, the court approved the parties' marital settlement agreement.

In summer 2003, Rita sold her home in Tolono, Illinois, and moved to Urbana, Illinois. On August 21, 2003, Kelly, worried for Jessie's emotional well-being and high school athletic career, filed a petition to modify the judgment of dissolution of marriage. In it, Kelly requested Jessie's custody so that Jessie could continue to attend Unity High School in Tolono, Illinois.

On September 10, 2003, Rita filed a response, stating despite her move to Urbana, Jessie would continue to attend Unity High School in Tolono. Rita also filed a petition for adjudication of indirect civil contempt, alleging Kelly had failed to pay health insurance premiums and uncovered medical expenses pursuant to the marital settlement agreement.

According to Rita, she spent $25,416 on health insurance premiums. Rita, however, concedes that Kelly owes her only $11,426.11 in premiums since a few payments were made on the health insurance premiums prior to the dissolution of their marriage. She also claims that Kelly owes her $378.75 for medical bills paid to Christie Clinic for Jessie.

Kelly argues that the insurance premiums were actually paid by Rita's employer, not Rita, and therefore, he should not be responsible for them. Kelly further claims that even if Rita had paid the premiums, he should only be responsible for 50% of the premiums paid for Jessie, not for those paid for Rita. Finally, Kelly argues he is entitled to offset premium payments amounting to $3,400 because of monthly child support overpayments of $120 paid between January 2001 and July 2003.

The issue on appeal centers on article III, "SUPPORT OF CHILDREN AND RELATED MATTERS," of the marital settlement agreement, which states as follows:

"1. HUSBAND will pay to WIFE child support based upon approximately 20 percent of his net income from his current employment. The exact amount of said child support at the current time is the sum of $200.00 per month. Wife acknowledge[s] that the amount agreed on is less than 20 percent of his net income for the reason that it is contemplated that Jessie will spend a great deal of time with the HUSBAND.

2. WIFE will carry the child on her health insurance, and the parties will equally divide any uncovered medical, dental, or orthodontic expenses on a 50/50 basis. In the event she can no longer obtain health insurance through her employment, then HUSBAND will make every effort to obtain health insurance. In addition to the child support in [a]rticle III, [p]aragraph 1, the HUSBAND will reimburse the WIFE for 50 percent of the health insurance premiums currently being paid by the WIFE."

On October 29, 2003, the trial court conducted a hearing on Kelly's petition to modify. Michael Dummit, Rita's immediate superior, testified that Rita's employer provides insurance to Rita and Jessie. Dummit explained that the money paid to cover health care is paid directly by the union but indirectly through employees' negotiated benefit packages. Under this plan, monthly health insurance premium payments ranging from $303.80 to $512 are taken from Rita's pay. Rita never has access to the money deducted for health insurance premiums, but the premiums were considered to be an amount that would have been added to her paycheck had she not applied for the health insurance plan. For example, if there is a $1 raise in Rita's pay, 50 cents is reflected in her paycheck, while the rest pays the health coverage premiums. Dummit also stated Rita was insured under this plan prior to the dissolution of the marriage, and the premium for this coverage remains the same regardless of the number of dependents.

Relying on the above testimony, the trial court found that the money used to pay the premium was part of Rita's compensation. The court then found that Rita's premium was based on the average number of participants in the entire plan, and Rita's premium payments cover both herself and Jessie. The court also determined that the parties' marital settlement agreement controls their respective responsibilities for the health insurance premium and the agreement requires Kelly to reimburse Rita for half of the premiums that she pays.

On October 29, 2003, the trial court entered judgment against Kelly in the amount of $11,426.11 for health insurance premiums and $378.75 for charges from Christie Clinic. This appeal followed.

## II. ANALYSIS

### A. The Trial Court Correctly Ordered Kelly To Reimburse Rita for Half of the Premiums

■ On appeal, Kelly argues the trial court improperly interpreted the marital settlement agreement to order Kelly to pay Rita money for health insurance premiums. In so arguing, Kelly maintains the court's finding that Rita, not her employer, paid the health insurance premium was incorrect. We disagree.

As the Illinois Second District Appellate Court stated in *In re Marriage of Turrell*, 335 Ill. App. 3d 297, 304, 781 N.E.2d 430, 437 (2002), "[w]hen a trial court has directed a finding in a bench trial, we review that decision under the manifest weight of the evidence standard."

In the instant case, Rita called Dummit, the business representative for Carpenter's Local 44 and Rita's immediate superior, as a witness. Dummit testified as to insurance premiums are paid by Rita's employer:

"Q. You would agree with me, would you not, that part of her package as well as your union member package, is that the contractor pays the health insurance directly rather than give the money to the union member to pay to health insurance?

A. They handle our money, yes, but indirectly it's coming out of our package.

Q. Okay. So if I said to you that the contractors are paying the health insurance, they're writing the check, but it is coming out of the pocket of your members, would I be accurate?

A. Right."

Kelly, on the other hand, did not present evidence that would support his claim that Rita's employer paid the health insurance premiums.

Based on the uncontradicted testimony by Dummit, the trial court found the evidence showed that Rita had paid the health insurance premium in question. Such a finding is not against the manifest weight of the evidence. We now turn to Kelly's second argument that the trial court incorrectly interpreted the parties' marital settlement agreement.

The pertinent language in the settlement agreement states, "In addition to the child support in [a]rticle III, [p]aragraph 1, the HUSBAND will reimburse the WIFE for 50% of the health insurance premiums currently being paid by the WIFE." The trial court found no ambiguity in this sentence and required Kelly to pay 50% of all the health premiums.

Interpreting a marital settlement agreement is a question of law, which we review *de novo*. *In re Marriage of Sweders*, 296 Ill. App. 3d 919, 922, 695 N.E.2d 526, 529 (1998). "[W]here the terms are unambigu-

ous, the parties' intent is determined *solely* from the language of the instrument." (Emphasis added.) *In re Marriage of Mulry*, 314 Ill. App. 3d 756, 759, 732 N.E.2d 667, 671 (2000). Further, "[l]anguage is not rendered ambiguous simply because the parties do not agree on its meaning." *Mulry*, 314 Ill. App. 3d at 759, 732 N.E.2d at 670.

Here, the language in the marital settlement agreement clearly states that Kelly will reimburse Rita for half of any health insurance premiums Rita pays. Such language is not ambiguous, and we determine the parties' intent solely from that language. Accordingly, we agree with the trial court's interpretation of the marital settlement agreement and affirm.

In so holding, we disagree with the dissent that our determination focuses on only one sentence and "violates the rule that the intent of the parties must be determined with reference to the contract as a whole, not merely by reference to particular words or isolated phrases, but by viewing each part in light of the other." 352 Ill. App. 3d at 335. First, "the best indication of the parties' intent is the language of the contract, that language *must prevail* when it conflicts with a general rule of construction." (Emphasis added.) *Labor World, Inc. v. Just Parts, Inc.*, 315 Ill. App. 3d 903, 906, 735 N.E.2d 149, 152 (2000). In this case, the language in the marital settlement agreement clearly states that Kelly will reimburse Rita for half of any health insurance premiums Rita pays, and such language must prevail. Second, as the dissent correctly noted, the title of article III indicates this particular article deals with child support and related matters, and the sentence in question "begins with a reference to child support." 352 Ill. App. 3d at 335. These references, however, do not limit the provisions in question to "support of children" only. If we construe the language in question as the dissent suggests, which is to require Kelly to pay only the half of the health insurance premium attributed to Jessie and not the half of the premium Rita pays, then article III should be titled as "SUPPORT OF CHILDREN" instead of "SUPPORT OF CHILDREN AND RELATED MATTERS."

We further disagree with the dissent's statement that "[i]t is also significant that Rita never raised this argument for five years, until Kelly requested a change in custody," and Rita's failure to request reimbursement from Kelly is an indication that the parties did not intend for Kelly to be responsible for half of the premiums that Rita paid. 352 Ill. App. 3d at 335. As the Supreme Court of Illinois stated:

> "Traditional contract interpretation principles in Illinois require that:
>> '[a]n agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it. It speaks

for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence.' [Citation.]" *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462, 706 N.E.2d 882, 884 (1999). The dissent's speculation as to the parties' intent based on Rita's inaction violates this well-established "four corners" rule. Further, even if we indulge in the same kind of speculation that the dissent does, the fact that "Rita never raised this argument for five years, until Kelly requested a change in custody," does not necessarily mean that the parties did not intend for Kelly to be responsible for half of the premium that Rita paid. For example, Rita may have chosen not to enforce Kelly's obligation so that they could maintain a civil relationship or because the cost of litigation was too high for the amount involved. In addition, Kelly's initial voluntary premium payments for which Rita granted Kelly credit show Kelly's awareness of what the current premium he owed was and that he intended to be responsible for half of Rita's health premium.

Last, we note that the dissent states our decision "does a real disservice to a fundamental policy, that dissolution-of-marriage cases are best resolved when the parties are able to work out an agreement resolving their differences. Litigants will not be encouraged to enter into agreements if their agreements are so easily torn apart." 352 Ill. App. 3d at 336. The dissent, however, asks the question "is there any logical reason to require husband to pay for wife's health insurance coverage," and then states "[e]quity does not require that Kelly pay for a portion of Rita's health insurance coverage." 352 Ill. App. 3d at 335. The dissent's effort to make the provisions in question "logical" or "equitable" for Kelly violates the long-established principle that "a court of law has no right to erroneously construe the intention of the parties, when clearly expressed, in the endeavor to make better contracts for them than they have made for themselves." *Sun Printing & Publishing Ass'n v. Moore*, 183 U.S. 642, 674, 46 L. Ed. 366, 382, 22 S. Ct. 240, 253 (1902). We, therefore, disagree with the dissent's interpretation of the settlement agreement language even if it leads to a more "logical" or "equitable" agreement for Kelly.

### B. The Trial Court Correctly Denied Kelly an Offset on the Health Insurance Premiums Owed

■ Kelly argues that even if the trial court correctly found that he owes 50% of the health insurance premiums paid by Rita, the amount owed should be reduced by the amount of child support he overpaid, which totals $3,400. Rita claims that Kelly's argument is forfeited because Kelly cited no authority supporting the argument as required

by Supreme Court Rule 341(e)(7) (177 Ill. 2d R. 341(e)(7)). We agree with Rita.

Supreme Court Rule 341(e)(7) states, "[p]oints not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." 177 Ill. 2d R. 341(e)(7). Counsel for Kelly neglected to cite legal authority in support of the argument. "This court has often stated the failure to cite legal authority in the argument section of a party's brief forfeits the issue for review." *In re Marriage of Parr*, 345 Ill. App. 3d 371, 380, 802 N.E.2d 393, 401 (2003). Kelly has, therefore, forfeited this issue.

Moreover, were we to address the merits, we would not grant a reduction because the trial court's denial of offset was not an abuse of discretion or against the manifest weight of the evidence. See *Slagel v. Wessels*, 314 Ill. App. 3d 330, 332, 732 N.E.2d 720, 721 (2000) (which states: "[t]he standard of review for a current child support award is whether the award is an abuse of discretion or the factual predicate for the decision is against the manifest weight of the evidence").

As the Illinois First District Appellate Court stated in *In re Marriage of Lehr*, 317 Ill. App. 3d 853, 862, 740 N.E.2d 417, 424 (2000), "the general rule is that no credit is given for voluntary overpayments of child support, even if they are made under the mistaken belief that they are legally required." Here, Kelly voluntarily paid Rita child support beyond the required monthly amount, and the trial court correctly determined that Kelly's voluntary additional child support payment should not offset his health-insurance-premium obligations.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

McCULLOUGH, J., concurs.

JUSTICE COOK, dissenting:

I respectfully dissent.

This case presents three questions. First, does the language of article III, paragraph 2, require "Husband," to pay for any health insurance coverage on "Wife"? Second, does the language require husband to pay for a portion of any health insurance coverage on the child? I suggest husband is not required to pay for wife's health insurance but is required to pay a portion of any health insurance premium for the child. That leads to the third question: Is there any logical reason to require husband to pay for wife's health insurance coverage

in order to comply with the agreement that husband will be responsible for a portion of the child's health insurance premium?

Marital settlement agreements are contracts and subject to the same rules of construction as are applied to any contract. The primary goal in construing a settlement agreement is to ascertain the intent of the parties. A court must consider the contract as a whole, rather than focusing upon isolated portions. *In re Marriage of Ackerley*, 333 Ill. App. 3d 382, 398, 775 N.E.2d 1045, 1059 (2002). "The intent of the parties to a contract must be determined with reference to the contract as a whole, not merely by reference to particular words or isolated phrases, but by viewing each part in light of the others." *La Throp v. Bell Federal Savings & Loan Ass'n*, 68 Ill. 2d 375, 381, 370 N.E.2d 188, 191 (1977).

The marital settlement agreement here is divided into logical units, articles, that address such issues as custody, child support, maintenance, and other more particular issues. Article III is the article of interest in this case:

"ARTICLE III

SUPPORT OF CHILDREN AND RELATED MATTERS

1. HUSBAND will pay to WIFE child support based upon approximately 20 percent of his net income from his current employment. The exact amount of said child support at the current time is the sum of $200.00 [handwritten] per month [handwritten]. [W 9—16—98.] [KGW 9—16—98.] WIFE acknowledges that the amount agreed on is less than 20 percent of his net income for the reason that it is contemplated that Jessie will spend a great deal of time with the HUSBAND.

2. WIFE will carry the child on her health insurance, and the parties will equally divide any uncovered medical, dental, or orthodontic expenses on a 50/50 basis. In the event she can no longer obtain health insurance through her employment, then HUSBAND will make every effort to obtain health insurance. In addition to the child support in [a]rticle III, [p]aragraph 1, the HUSBAND will reimburse the WIFE for 50 percent of the health insurance premiums currently being paid by the WIFE."

Article III deals with child support and matters related to child support, such as insurance for the child. It does not deal with spousal support (maintenance) or matters such as insurance for the wife. Article III, paragraph 2, says that wife will "carry the child" on her health insurance and "any uncovered" expenses will be divided. That means uncovered expenses of the child, not uncovered expenses of the wife or the husband or the parties' other relatives. If wife can no longer obtain health insurance through her employment, husband will

attempt to obtain insurance—again, not insurance to cover the wife or others, but to cover the child, insurance related to child support. In addition to child support payments, "the HUSBAND will reimburse the WIFE for 50 percent of the health insurance premiums currently being paid by the WIFE." What premiums are we talking about? Premiums for the wife, premiums for other members of her family, any other health insurance premiums she may currently be paying? No, premiums engendered by the requirement that "WIFE will carry *the child* on her health insurance" (emphasis added), the opening words of paragraph 2.

The majority picks out a part of a sentence, "HUSBAND will reimburse the WIFE for 50 percent of the health insurance premiums currently being paid by the WIFE," and reads those words in isolation, without analysis, to summarily conclude that the agreement "clearly states that Kelly will reimburse Rita for half of any health insurance premiums Rita pays" regardless if those premiums were paid on behalf of Jessie or another. 352 Ill. App. 3d at 331. The majority violates the rule that the intent of the parties must be determined with reference to the contract as a whole, not merely by reference to particular words or isolated phrases, but by viewing each part in light of the other. According to its title, article III deals with child support and matters relating to child support. The sentence upon which the majority relies begins with a reference to child support. The majority ignores that language. Under the majority's approach, if the child were switched to Kelly's policy, would Rita still be entitled to a portion of her premiums?

It is also significant that Rita never raised this argument for five years, until Kelly requested a change in custody. The interpretation placed on their agreement by the parties is a significant factor that we should take into account. See also 810 ILCS 5/2—208 (West 2002) (course of performance or practical construction in commercial cases).

Getting to the third question, is there any logical reason to require husband to pay for wife's health insurance coverage to comply with the agreement that husband will be responsible for 50% of the child's health insurance premium? That might be the case if the premium was an undivided premium and the child's coverage represented a substantial portion of that premium. That is not the case here, however. It is common knowledge that coverage for children represents only a very small portion of the premium in a parent's health insurance policy. The majority concedes that there is no additional charge on Rita's policy for the coverage of Jessie. "[T]he premium for this coverage remains the same regardless of the number of dependents." 352 Ill. App. 3d at 329. Equity does not require that Kelly pay for a portion of Rita's health insurance coverage.

The majority opinion does a real disservice to a fundamental policy, that dissolution-of-marriage cases are best resolved when the parties are able to work out an agreement resolving their differences. Litigants will not be encouraged to enter into agreements if their agreements are so easily torn apart. It is also important to note that Rita's petition was filed in response to Kelly's petition. When a postdissolution petition is filed, whatever its merits, it is not appropriate for the respondent to comb the record for some fanciful basis on which to file his or her own petition. The majority opinion encourages bad practice.