**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210566-U

Order filed March 22, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| LORI A. KILBY, | ) | Tazewell County, Illinois, |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | Appeal No. 3-21-0566 |
| and | ) | Circuit No. 19-D-38 |
| | ) | |
| CRAIG P. KILBY, | ) | Honorable |
| | ) | Lisa Y. Wilson, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE ALBRECHT delivered the judgment of the court.
Presiding Justice Holdridge and Justice Davenport concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court's determination of husband's income for the purpose of maintenance award was not an abuse of discretion where he failed to present evidence and testimony sufficient for farming business valuation.

¶ 2    The petitioner, Lori A. Kilby, and the respondent, Craig P. Kilby, were married for over thirty years before they separated and filed for dissolution of marriage. Although they were able to resolve their property distribution and agreed that Lori was entitled to permanent maintenance, they submitted the issues of maintenance computation, college expenses, and attorney fees for

discovery sanctions to the circuit court. Craig now challenges the court's determinations, arguing that (1) the court erred in its calculation of his monthly income for maintenance, (2) the court erred in ordering him to pay one-half contribution of his son's college expenses, and (3) the court's award of attorney fees to Lori's counsel due to discovery violations was excessive. Craig also asks this court to review the circuit court's supplemental order reaffirming its prior findings and the order denying Craig's motions to reconsider and reopen evidence. For the following reasons, we affirm.

¶ 3                                      I. BACKGROUND

¶ 4          The parties were married on February 16, 1985. Five children were born of the marriage, all of whom are now adults. Their youngest son, Jared, was enrolled as a full-time student at Iowa State University at the time of dissolution. Lori filed a petition for dissolution of marriage on February 4, 2019.

¶ 5          The parties created Prairieview Farms, Inc., during the marriage. Prairieview Farms is primarily a farming business but previously included operations incident to farming, such as trucking and hauling done on behalf of Prairieview Farms and other corporations on a limited basis. During their marriage, the parties owned approximately 255 acres, much of which was tillable farmland. The majority of farmland Prairieview Farms utilizes, however, is through cash or crop share rentals. In the years leading up to the dissolution of marriage, the acreage rented by the corporation totaled around 980 acres. Of this total, approximately 580 acres were rented from Craig's relatives. Prairieview Farms rented 157 acres from Craig's deceased mother's estate and 193 acres from his father. The company rented an additional 241 acres from the parties' mutually owned property with Lori as the designated owner. The remaining acreage was rented from one

of Craig's distant relatives, Ann Kilby, but testimony indicated that a large portion of the property was sold before trial.

¶ 6      Craig is the sole owner and president of Prairieview Farms and retained all stock shares post-dissolution. His education includes a Bachelor of Science degree in agricultural economics from the University of Illinois Urbana-Champaign. His other primary form of income is through his work as a field agronomist for Beck's Hybrids with an annual salary approaching $100,000 plus commissions. He also does farmwork for his father who was 90 years old at the time of trial. Lori is a certified pharmacy technician and was duly employed in this capacity from August 2016 up until December 2020. She subsequently began employment as a full-time office manager earning $31,200 annually on a $15 per hour wage. During most of the parties' marriage, Prairieview Farms' tax returns showed W-2 income paid to Lori. Craig and Lori agreed that the salary was used to get cash for family expenses, such as their children's education, and was not actually paid out to Lori. Instead, it was deposited into their joint checking account.

¶ 7      During pretrial discovery, Craig repeatedly failed to provide complete answers and financial documents concerning the income he derived from Prairieview Farms. For instance, Craig's initial and updated financial affidavits failed to specify his farming income, stating "FARM INCOME TO BE PROVIDE [*sic*]" and "FARM INCOME (UNKNOWN)."

¶ 8      Lori's counsel made repeated efforts to procure this information. Specifically, Lori's counsel filed a motion to compel on May 20, 2019, which related to financial information concerning Prairieview Farms that was sought in discovery. A petition for rule to show cause was filed on July 3, 2019, alleging Craig failed to comply with an agreed mutual restraining order as well as to provide financial information regarding Prairieview Farms. On June 28, 2019,

3

the court ordered Craig to comply with deficiencies identified within Lori's motion to compel within 21 days.

¶ 9     A subsequent petition for rule to show cause was filed on July 23, 2019, alleging Craig failed to comply with the court's order. Although Craig tendered documents in compliance with Lori's discovery requests, he failed to appear for the hearing, which was held on August 28, 2019, resulting in an award of $393.75 in fees to Lori's counsel. A third petition for rule to show cause was filed on January 7, 2020, concerning the sale of mutual assets and Craig's failure to respond to requests from the judicially appointed joint expert regarding Prairieview Farms' valuation.

¶ 10    A second motion to compel was filed on July 16, 2020, once more attempting to ascertain Craig's income and other financial information. The court ordered Craig to respond to these requests under oath by August 17, 2020, and reserved the attorney fee request in its order. However, as the record reflects, Craig did not supply his financial affidavits and responses to these discovery requests until September 9, 2020. A third motion to compel discovery was filed on September 15, 2020.

¶ 11    After the September 25, 2020, pretrial settlement conference, the parties resolved the property distribution and all other issues except for maintenance, Jared's college expenses, and attorney fees. Pursuant to the agreement, Lori retained the marital home, the parties' three dirt bikes, and received an $82,303 payment. Craig was directed to deed Lori an 80-acre tract of land from the parties' mutually owned land. Craig retained, among other things, the remaining 160 acres of tillable farmland and the Prairieview Farms operation. Lori's resignation as secretary of Prairieview Farms was a condition of this settlement. The retirement accounts were split equally.

¶ 12　　　　Thereafter, a trial ensued to adjudicate the remaining issues. The court heard evidence on three separate dates: October 1, 2020, December 9, 2020, and February 16, 2021. The trial testimony and evidence centered on Craig's income from the farm operation.

¶ 13　　　　Both parties prepared and presented demonstrative exhibits explaining their income valuation for the purpose of maintenance calculation. Lori's counsel prepared a 2021 projection income chart which the court ultimately adopted. The chart utilized a mechanism known as a three-year income averaging. Simply put, this averaging device distilled the parties' respective gross incomes for a three-year period into one figure. The gross income was then adjusted into net income for the purpose of setting a maintenance award.

¶ 14　　　　At the conclusion of the February 16, 2021, hearing, the court took the parties' arguments under advisement. Thereafter, the court entered an order resolving the outstanding issues. In arriving at the monthly maintenance award of $8223.79 with retroactivity to October 2019, the court adopted the income chart prepared by Lori. The court expressly rejected Craig's proposal of $33,615 per year in maintenance. It found that Craig's proposal did not account for the entirety of his earnings. Relying on this court's decision in *In re Marriage of Hochstatter*, 2020 IL App (3d) 190132, the circuit court declined to deduct from Craig's income for nonaccelerated depreciation. Further, the court directed Craig (1) to contribute 50% to Jared's college expenses pursuant to section 513 of the Act (750 ILCS 5/513 (West 2020)) and (2) to pay Lori's attorney a total of $7935 in attorney fees pursuant to Illinois Supreme Court Rule 219(c) (eff. July 1, 2002) as a sanction for his failure to comply with discovery requests.

¶ 15　　　　Craig subsequently filed two motions. His motion to reconsider, in part, argued that the maintenance award failed to consider the prospective incomes of the parties and was grossly inequitable. Craig also filed a motion to reopen evidence, seeking to call an additional witness to

analyze his tax returns which would provide a more accurate depiction of his income. On October 4, 2021, the court heard argument on both motions as well as Lori's rule to show cause for failure to make payments as directed by the court's prior order.

¶ 16    The court entered a judgment for dissolution of marriage on October 19, 2021. Concurrently, the court supplemented its July 12, 2021, order and reaffirmed Craig's obligations, *inter alia*, to contribute 50% of educational expenses for Jared's education, pay Lori $8223.79 in maintenance per month with retroactivity, and award Lori's attorney fees in the sum of $7935 based on the repeated failures to provide Prairieview Farms' financial information in discovery pursuant to Rule 219. Ill. S. Ct. R. 219(c) (eff. July 1, 2002). In denying Craig's motions, the court entered a November 16, 2021, order stating that, while it adopted Lori's worksheet for income computation, it reviewed all the exhibits and trial testimony and arrived at the monthly maintenance award independently. Further, the court pointed out that Craig's motion to reopen evidence failed to provide an adequate reason to do so.

¶ 17    Craig appeals.

¶ 18                                    II. ANALYSIS

¶ 19    On appeal, Craig argues that the circuit court erred when it refused to deduct legitimate business expenses from his income and inflated the income of Prairieview Farms. He also argues that the three-year income averaging mechanism was not appropriate for his circumstances. Because Craig's finances have decreased due to the dissolution of marriage, he asserts that his son Jared is in a better position to pay his college expenses and that Lori is in a better position to pay her attorney fees. Lastly, Craig argues that the court's denial of his motion to reopen evidence and to allow an accounting expert to testify was an abuse of discretion. Craig asks that we reverse and remand this cause for further proceedings.

6

¶ 20                         A. Gross and Net Income Calculation for Maintenance Award

¶ 21         Craig asserts that the court erred when calculating his income for purposes of maintenance in three distinct ways. First, Craig identifies specific items from the tax years of 2017, 2018, and 2019, which he argues were erroneously attributed to his income. Second, Craig argues alternately that the court misinterpreted its authority when determining whether to include nonaccelerated depreciation, and that by including it, the court abused its discretion. Third, while Craig concedes the three-year income-averaging mechanism used by the trial court is potentially appropriate, he argues that it failed to accurately reflect Craig's current and future income and therefore amounts to an abuse of discretion. We address each of Craig's arguments in turn.

¶ 22                         1. Income for Tax Years 2017, 2018, and 2019

¶ 23         Craig first argues that the circuit court misconstrued section 505 of the Act when it included nonaccelerated depreciation against his Prairieview Farms' business income computation. 750 ILCS 5/505 (West 2020). Craig asserts that because the 2017 amendment to section 505 explicitly requires the inclusion of accelerated depreciation into net business income and omits any reference to nonaccelerated depreciation, the rules of statutory construction mandate deducting Craig's nonaccelerated depreciation from his net business income. While Craig frames his argument as the inappropriate inclusion of these items, a more accurate characterization of his challenge is whether the circuit court impermissibly refused to exclude and deduct nonaccelerated depreciation when determining net income pursuant to section 505. As such, he has presented a question of statutory interpretation that we review *de novo*. *In re Marriage of Rogers*, 213 Ill. 2d 129, 135–36 (2004).

¶ 24         This court has previously held that the amendment to Section 505 does not require the trial court to deduct nonaccelerated depreciation when determining net business income. See

7

*In re Marriage of Hochstatter*, 2020 IL App (3d) 190132, ¶ 24. While nonaccelerated depreciation *may* be deducted, that deduction is dependent on the court determining, in its discretion, that the nonaccelerated depreciation is a necessary expense to carry on a trade or business. See *id.* Craig is correct that the amendment to section 505 removed the requirement that a party must first establish that an expense was for the repayment of debt prior to a court deducting said expense from net income determinations for maintenance purposes. Compare 750 ILCS 5/505(a)(3)(h) (West 2016), with 750 ILCS 5/505(a)(3.1) (West 2020). He is mistaken, however, that this amendment imposes a preference on courts to favor all claimed business income deductions. Rather, the onus remains on the claimant. As this court has made clear, "qualifying for the deduction still requires the claimant to convince the circuit court" that the requested deduction "is an appropriate and reasonable business expense that is required to carry on the trade or business." *Hochstatter*, 2020 IL App (3d) 190132, ¶ 25.

¶ 25 Regarding Craig's challenge to the amount of maintenance awarded, reviewing courts in Illinois have consistently explained, "the propriety of a maintenance award is within the discretion of the trial court and the court's decision will not be disturbed absent an abuse of discretion." *In re Marriage of Schneider*, 214 Ill. 2d 152, 173 (2005). An abuse of discretion occurs only "when 'the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court.' " *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009) (quoting *People v. Hall*, 195 Ill. 2d 1, 20 (2000)).

¶ 26 When a party challenges the court's factual findings regarding maintenance, including determinations of the parties' income, such findings are set aside only if they are against the manifest weight of the evidence. *In re Marriage of Brill*, 2017 IL App (2d) 160604, ¶ 30; *In re Marriage of Wojcik*, 362 Ill. App. 3d 144, 153 (2005). A finding of fact is against the manifest

8

weight of the evidence when the opposite conclusion is evident or the finding is unreasonable, arbitrary, or not based on the evidence. *Brill*, 2017 IL App (2d) 160604, ¶ 30.

¶ 27    Section 505 of the Act does not separately define "income." See *Rogers*, 213 Ill. 2d at 136. Under its plain and ordinary meaning, "income" is " 'something that comes in as an increment or addition *** a gain or recurrent benefit that is usu[ually] [*sic*] measured in money *** the value of goods and services received by an individual in a given period of time.' " *Id.* at 136–37 (quoting Webster's Third New International Dictionary 1143 (1986)).

¶ 28    The only items Craig argues should not have been imputed against his net income are Prairieview Farms incomes, expenses, and deductions. Section 505 of the Act identifies the appropriate processes to determine an individual's net income for the calculation of maintenance and child support awards. See 750 ILCS 5/504(b), 5/505(a) (West 2020). Section 505(a)(3.1)(A) offers specific instruction to a trial court on which "expenses" may, or even must, be deducted from gross business income to calculate net business income, stating in relevant part:

> Business income. For purposes of calculating child support, net business income from the operation of a business means gross receipts minus ordinary and necessary expenses required to carry on the trade or business. *** The court shall apply the following:
>
> *** The accelerated component of depreciation and any business expenses determined either judicially or administratively to be inappropriate or excessive shall be excluded from the total or ordinary and necessary business expenses to be deducted in the determination of net business income from gross business income. 750 ILCS 5/505(a)(3.1)(A) (West 2020).

9

¶ 29    In calculating Craig's 2017, 2018, and 2019 income, the court adopted Lori's income chart prepared as a demonstrative exhibit. By doing so, it found that Craig's gross income was $268,902.61 in 2017, $368,895.63 in 2018, and $478,313.67 in 2019.

¶ 30    On appeal, Craig argues that these amounts were erroneously inflated through the inclusion of business expenses at Prairieview Farms that should have been excluded from his income. Specifically, Craig alleges that items improperly considered for purposes of income computation inflated his income by $98,210 for tax year 2017, $267,536 for tax year 2018, and $264,582.66 for tax year 2019. Outside of the nonaccelerated depreciation from Prairieview Farms, Craig states that he was wrongly attributed $35,000 in income through "Prairieview Farms Inc[.] W-2 Income" in 2017 and 2018 and $10,037.66 in 2019. He argues that this was in fact Lori's W-2 income. Lori claims that she did not receive this income and that this was done merely for tax reduction purposes.

¶ 31    Initially, we note the record reflects Lori reported $35,000 in ostensible compensation as an employee of Prairieview Farms in her 2017 and 2018 W-2 forms and $10,037.66 in 2019. Craig's trial testimony, however, indicates that this was done at the suggestion of Craig and Lori's accountant to avoid taxation on Prairieview Farms. This reported W-2 income was meant to create an appearance of a wage for Prairieview Farms' corporate officers. Lori further testified that her salary was used as a device to avoid additional taxation while the parties paid expenses such as college tuition, vacations, and loan payments through the corporation. The record also reflects Lori was not paid as a board of director in 2018. Indeed, as Craig's testimony demonstrated, it was the regular practice of the parties to commingle Lori's Prairieview Farms income with Craig's income in a joint account to pay nonbusiness expenses, such as costs associated with their household and family. In light of this testimony, the court did not err when

it refused to deduct from Craig's income the amounts that the parties previously charged to Lori as Prairieview Farms W-2 income.

¶ 32    Craig next challenges 2018 rents reflected on his corporate tax returns included in his net income in the amount of $152,860. He argues these expenses were paid to others on behalf of Prairieview Farms and should thus be removed from income calculation.

¶ 33    Craig asserts the $152,860 in rent was for the farmland Prairieview Farms rented from his father, mother, and Lori. As the record reflects, Craig possessed power of attorney for his father, Donald, and is executor of his deceased mother Patricia's estate. The record also reflects various self-dealings between Craig and Donald. Lease agreements between Prairieview Farms and Donald were unilaterally computed by Craig, who signed on behalf of his father as power of attorney and as the person renting the property. Indeed, Craig testified that he determined rates for the farmland rentals each year. Craig paid rent for land owned by his mother's estate to himself as executor of her estate. Granted, he and his sister are the beneficiaries of the estate; and he owes her a fiduciary duty; but he controls the transactions. Craig testified that a good chunk, but not all, of this rental money went to his parents. He also explained that he computed cash rents from land purportedly owned by Lori to maximize their ability to cover expenses for college, reduce tax liability, and pay taxes and interest.

¶ 34    In many cases, rents paid for farmland may be the quintessential necessary business expense to carry out a farming operation. However, in the unusual circumstance presented here, Craig admitted that the rents paid by Prairieview Farms to Lori were based on factors other than market value or business purpose. In other words, they were not arm's length transactions. Therefore, it was not unreasonable for the circuit court to refuse to exclude it from income, and we will not disturb the weight the court apportioned to Craig's testimony. See *In re Marriage of*

11

*Werries*, 247 Ill. App. 3d 639, 642 (1993) ("The determination of all issues regarding the credibility of the parties and their witnesses or the weight to give the evidence lies with the trier of fact."). As such, the circuit court did not abuse its discretion when refusing to deduct the $152,860 in 2018 rent from Craig's income.

¶ 35                                     2. Depreciation

¶ 36        Craig next argues that the court abused its discretion by not deducting Prairieview Farms' nonaccelerated depreciation from Craig's income.

¶ 37        Craig's reliance upon various concurring opinions interpreting section 505 prior to 2017 is unpersuasive. First and foremost, these decisions predate the amendment to section 505 which now offers specific instruction for the appropriate calculation of business income. Post-amendment, these cases still serve to "provide a circuit court guidance when deciding, *in its discretion*, whether to allow a deduction for nonaccelerated depreciation." (Emphasis in original.) *Hochstatter*, 2020 IL App (3d) 190132, ¶ 26.

¶ 38        Here, the court expressly referenced *Hochstatter* in declining Craig's request to consider nonaccelerated depreciation as a deduction from his income in the calculation of maintenance. *Id.* While subsection 505(a)(3.1)(A) allows a court to deduct business expenses found judicially or administratively inappropriate or excessive, such determinations remain permissive. The amendment does not create the statutory obligation, or even preference, for a trial court to do so. 750 ILCS 5/505(a)(3.1)(A) (West 2020). To rule otherwise would be inconsistent with a plain reading of the statute and an uninterrupted line of cases within this district. See *In re Marriage of Nelson*, 297 Ill. App. 3d 651 (1998); *Hochstatter*, 2020 IL App (3d) 190132.

¶ 39        We find the issue presented here analogous to that presented to the Illinois Supreme Court when it decided *In re Marriage of Minear*, 181 Ill. 2d 552 (1998). There, the trial court

12

added back a $10,874 depreciation expense to the husband's income for purpose of a maintenance award determination, because that depreciation did not represent an out-of-pocket expense. *Id.* at 556. The husband did not explain the basis for this depreciation expense at trial. *Id.* at 560. In upholding the trial court's decision to include this expense against the husband's income, the court found the husband "failed to present evidence at trial" to "warrant the exclusion of that expense." *Id.* While the *Minear* court interpreted the pre-amendment provision to section 505 of the Act, the rationale concerning depreciation exclusion offers this court sensible guidance. *Id.* Here, while the nature of the depreciations and business deductions were addressed at trial, Craig's testimony undermined his efforts to convince the circuit court that the purported Prairieview Farms' business expenses were reasonably required to carry out the business. See *Hochstatter*, 2020 IL App (3d) 190132, ¶ 25.

¶ 40            Craig's failure to provide adequate testimony and documentation to satisfy his burden of proof is fatal to his claim. His testimony suggests that his farming depreciation was not an expense, but just another tax write off. According to Craig, money reported on the 4285 cooperative distribution form would return to him. The patronage credited against Craig's income, to which Craig categorized as a refund or distribution—not a deduction, as he argues on appeal—would be his to claim. While Craig is correct that some of his depreciation deductions resulted from expenses such as Prairieview Farms' combines, he failed to identify which of the reported depreciation expenses were associated with his farming equipment purchases. The circuit court's inability to deduce what, if any, of the reported deductions and expenses were necessary to carry out the Prairieview Farms' business was understandable considering Craig's failure to testify to such.

¶ 41    Further, Craig's reliance on *In re Marriage of Britton*, 2022 IL App (5th) 210065, is misplaced. In *Britton*, the husband's depreciation deductions were lumped into a single, total depreciation report. *Id.* ¶ 62. Because the trial court failed to exclude accelerated depreciation and make findings as to the nonaccelerated depreciation, the matter was remanded, in part, for these considerations. *Id.* ¶¶ 63, 68. In contrast, the income chart adopted by the court here was a distillation of income which expressly separated accelerated and nonaccelerated incomes. Based on the parties' testimony at trial, the demonstrative exhibits of income produced by the parties, and the court's reliance on *Hochstatter*, the court determined, within its discretion, that the nonaccelerated depreciation should not be excluded from Craig's income.

¶ 42    Therefore, consistent with this court's decision in *Hochstatter*, we find that the circuit court did not err when exercising its discretion by refusing to deduct the nonaccelerated depreciation from Craig's income computation.

¶ 43                          3. Three-Year Income-Averaging

¶ 44    Craig next contends that the circuit court's mechanism to calculate his maintenance obligation was in error. Specifically, Craig alleges that, by averaging his income for a three-year period, the maintenance award inaccurately depicts his current and projected future income.

¶ 45    It is within the sound discretion of the circuit court to determine whether income averaging is necessary and such a decision will not be disturbed absent an abuse of that discretion. *In re Marriage of Evanoff & Tomasek*, 2016 IL App (1st) 150017, ¶ 27. Past income is an appropriate consideration where current and future incomes remain uncertain. See *Reyna v. Reyna*, 78 Ill. App. 3d 1010, 1014 (1979).

¶ 46    Craig argues that income-averaging was inappropriately applied in this matter based on the variance of his net incomes from 2017 through 2019. Specifically, Craig asserts the inclusion

14

of 2019 tax information into the court's income-averaging resulted in an artificially inflated average due to that year's net income exceeding $200,000 more than his 2017 tax income.

¶ 47        Contrary to Craig's position, Illinois precedent suggests that income-averaging serves to further the ascertainment of a party's accurate net income in situations of substantial income variance. Income averaging is an approved method to determine a party's current income and may be applied in any case where appropriate. *In re Marriage of Garrett*, 336 Ill. App. 3d 1018, 1025 (2003). In circumstances where there is substantial year-to-year variance in income, courts have stated a preference for income averaging in determining net income. *In re Marriage of Freesen*, 275 Ill. App. 3d 97, 103 (1995) (finding the vice-president of a road construction corporation's yearly income fluctuation, which varied as much as $289,000 in a two-year period, necessitated an income averaging of at least the previous three-years to obtain an accurate income picture for purposes of an award under section 505 of the Act).

¶ 48        Strict adherence to averaging an individual's income from certain years is not required, and a court's modification with this form of income averaging is appropriate. *Garrett*, 336 Ill. App. 3d at 1025 (finding the court would have been justified in substituting a net income figure that predates one of the previous three years' net incomes); see also *In re Marriage of Gabriel & Shamoun*, 2020 IL App (1st) 182710, ¶ 41 (averaging two years of a father's income was not an abuse of discretion due to lack of credibility and difficulty in obtaining current income information); but see *In re Marriage of Schroeder*, 215 Ill. App. 3d 156, 161 (1991) (holding six-year-old income data to calculate net income was in error and did not reflect current circumstance). Generally, the method of calculating income is left to the "discretion of the trial court, as facts will vary in each case." *Freesen*, 275 Ill. App. 3d at 103.

15

¶ 49        We find that due to the significant variance in Craig's yearly income, and not in spite of this variance, the circuit court appropriately employed a three-year income average to ascertain Craig's net income. Craig is also incorrect in his assertion that the court's adoption of Lori's income chart and corresponding rejection of Craig's five-page competing demonstrative exhibit arises to an abuse of discretion. As Lori correctly points out, while accounting for post-dissolution income, Craig's competing demonstrative exhibit includes speculative scenarios leading to a decrease in Craig's annual income. In contrast to Lori's income chart, Craig's demonstrative exhibit does not refer to documentary evidence, such as the parties' tax information. His projected future income is neither supported by affidavit nor expert testimony. Accordingly, Craig's pre-dissolution income provides a more definite figure than the speculative and uncertain future projections within Craig's competing exhibit. See *Reyna*, 78 Ill. App. 3d at 1014. When adopting Lori's income chart, the court made clear that it found the maximum maintenance award offered by Craig's competing exhibit did not account for all of his earnings.

¶ 50        This court is aware that Craig's annual income will likely decrease because of the parties' property division. There is no doubt that an individual's income derived from a farming operation is largely dependent on the farmable land available. The circuit court, however, was confined to the income information presented at trial. While Craig argues that more recent tax information would become available shortly after the trial concluded in this matter, he concedes that such tax information was not available at that time. Further, Craig, as an educated, sophisticated operator of a successful farm business, was in position to provide the court with proof of the likely reduction in his income from the loss of the acreage awarded to Lori without recourse to his tax return. Under these circumstances, we cannot conclude that the circuit court abused its discretion when it determined that Craig failed to prove his entitlement to his proposed

16

deductions. Nor can we conclude that the court abused its discretion in adopting Lori's income calculation.

¶ 51                                    B. Education Expenses

¶ 52        Craig next argues that the circuit court's order directing him to contribute 50% to his youngest son's college tuition, books, and fraternity fees while attending Iowa State University was an abuse of discretion. He contends that in light of his incurred debt and maintenance responsibility as a result of his dissolution of marriage, there is no reason why Jared should not bear the burden of his own education expenses.

¶ 53        Whether the court erred in ordering Craig to pay 50% of Jared's remaining education expenses requires an examination into the educational expenses in a dissolution proceeding and is reviewed under the abuse of discretion standard. *Street v. Street*, 325 Ill. App. 3d 108, 115 (2001).

¶ 54        Section 513 of the Act controls a circuit court's ability to award educational expenses for nonminor children. 750 ILCS 5/513 (West 2020). Specifically, a court may award "sums of money out of the property and income of either or both parties *** for the educational expenses of any child of the parties" and unless through prior agreement by the parties, "all educational expenses which are subject *** to this section shall be incurred no later than the student's 23rd birthday." *Id.* § 513(a). A non-exhaustive list of what type of educational expense a party may be ordered to pay includes a child's tuition and fees, housing expenses, and costs of books and other supplies. *Id.* § 513(d)(1-2), (5).

¶ 55        Illinois courts have held that section 513 expenses, and specifically the payment of college expenses, is a form of child support. See *In re Marriage of Petersen*, 2011 IL 110984, ¶ 13; see also *In re Marriage of Jones*, 2016 IL App (3d) 150237, ¶ 6. A trial court considers the

17

parties' present and future financial resources in awarding college expenses. *In re Marriage of Deike*, 381 Ill. App. 3d 620, 627 (2008); 750 ILCS 5/513(j) (West 2020).

¶ 56　　In its July 12, 2021, order, the circuit court ordered Craig and Lori to share equally in Jared's college expenses until his graduation. It cited the parties' history of funding their children's college expenses and noted the parties' respective incomes, observing that Craig's income was "significant and persistent."

¶ 57　　The record reflects that, at the time of the order requiring the parties to pay for Jared's college expenses, Jared was 20 years old and remained a full-time student enrolled at Iowa State University.[1] In ordering college expenses recognized under section 513, the court appropriately considered the suitability of the parties' finances to pay for these expenses. While this court is mindful of the realities in Craig's argument that dissolution of marriage may generally create increased financial burdens upon the parties, Craig does not argue an inability to pay for these expenses. Conversely, the record reflects Craig is situated to shoulder this expense as he has for his four other children. Illinois courts have upheld a party's obligation to pay college expenses of his or her children in far more demanding circumstances. See *Deike*, 381 Ill. App. 3d at 629 (holding the trial court did not abuse its discretion in requiring a father to pay his one-half share of his children's college expenses despite the loss of his job and failing business endeavor).

¶ 58　　We find that the court did not abuse its discretion in ordering Craig to contribute 50% of his youngest son's college expenses pursuant to section 513 of the Act.

¶ 59　　　　　　　　　　　　C. Attorney Fees

---

[1] The record is inconsistent on Jared's birthday. The judgment for dissolution of marriage states he was born on January 22, 2000, while the order granting payment of his college expenses states he was born on September 29, 2000. The September birth date is corroborated through financial affidavits filed by both parties. Either date places Jared within the statutory age limit and thereby permits him to receive educational expenses pursuant to 750 ILCS 5/513(a).

18

¶ 60    Craig next challenges the circuit court's award of attorney fees in the amount of $7935 to Lori's attorney. This award stems from various efforts by Lori, in the form of motions to compel and petitions for rule to show cause, to secure discovery documents with accurate listings of incomes and losses from Prairieview Farms. In its July 12, 2021, order, the court identified four specific instances that were filed at the expense of Lori to secure documentation concerning Craig's farming income: (1) a July 16, 2020, motion to compel, (2) a notice to appear and produce dated August 6, 2020, (3) evidence of Craig's failure to comply with the notice to appear and produce at his deposition on August 20, 2020, and (4) a subsequent September 15, 2020, motion to compel.

¶ 61    The attorney fee award was not limited to these four instances. Rather, the circuit court's initial and supplemental orders clarified that Lori's attorney should be compensated for fees incurred to secure *all* documentation required to determine Craig's income from Prairieview Farms, referencing prior motions to compel and petitions for rule to show cause. On appeal, Craig asserts that Lori is positioned to pay her own attorney fees following the parties' dissolution and the circuit court abused its discretion in obligating him to pay.

¶ 62    Pursuant to Illinois Supreme Court Rule 219(c), a trial court may sanction a party for failing to comply with its orders or supreme court rules. See Ill. S. Ct. R. 219(c) (eff. July 1, 2002). When fashioning a sanction under this subsection, the trial court must specify the reasons and basis of the sanction either in the judgment order or a separate written order. *Id.* A court may impose sanctions from the non-exhaustive list that Rule 219(c) enumerates. See Ill. S. Ct. R. 219(c)(i)-(vii) (eff. July 1, 2002). Rule 219(c) allows for the imposition of reasonable attorney fees. *Id.* A sanctioning order under Rule 219(c) is just where it "insures both discovery and a trial on the merits." *Shimanovsky v. Gen. Motors Corp.*, 181 Ill. 2d 112, 123 (1998).

19

¶ 63    Trial courts maintain broad discretion in the oversight of pretrial discovery procedures, including the ability to impose reasonable sanctions against dilatory parties. *Savitch v. Allman*, 25 Ill. App. 3d 864, 870 (1975). An award of attorney fees remains within the sound discretion of the trial court and will not be disturbed save a clear abuse of discretion. *Id.*

¶ 64    Craig's continued refusal to produce financial information relevant to his income from Prairieview Farms is well-documented within the record. The efforts required by Lori's counsel to obtain this information is similarly documented. After a motion to compel, two petitions for rule to show cause concerning financial information, and a granted continuance, Craig failed to appear at the hearing to show cause on August 28, 2019, resulting in an award of attorney fees to Lori's counsel in the amount of $395.75. Going forward, the circuit court reserved Lori's requests for attorney fees. On July 27, 2020, the court ordered Craig to respond under oath to certain items requested by Lori concerning his finances by August 17, 2020. One such request was Craig's updated financial affidavit. Yet Craig did not produce this updated financial affidavit until September 9, 2020. Furthermore, and as previously addressed, Craig did not offer a calculation of his Prairieview Farms income in this affidavit, opting once more to list his income indeterminately: "FARM INCOME (UNKNOWN)." This fruitless pursuit of Craig's hidden finances turned costly for Lori's attorney. He filed an affidavit of attorney fees on September 22, 2020, representing a running tab of $7935.

¶ 65    We cannot say that the circuit court abused its discretion in awarding Lori attorney fees under Rule 219(c). Ill. S. Ct. R. 219(c) (eff. July 1, 2002). Craig characterizes his noncompliance in discovery as minimal. The record reflects otherwise. At the outset, while the trial court identified four instances of deficiency, the record is replete with additional instances wherein Craig failed to comply with Lori's discovery requests. Our review of the record reveals Lori's

20

attorney made upwards of six separate attempts over a seventeen-month period to procure financial information regarding Craig's income from Prairieview Farms. Craig's continued inability to respond or meaningfully supplement discovery requests and his delay in providing requested financial documents conveys a dilatoriness in the pretrial discovery process. The imposition of attorney fees has been upheld in contexts where a party, as was done here, "inexcusab[ly] fail[s] to provide" discovery information in a "timely manner." *In re Marriage of Davis*, 261 Ill. App. 3d 617, 621 (1994). The circuit court's identification of Lori's attorney's repeated efforts to secure this discovery documentation and ascertain Craig's farming income was encompassed within the court's order pursuant to its obligation in specifying its reasons under the rule. See Ill. S. Ct. R. 219(c). Finally, we note that the court's Rule 219(c) award served to effectuate the rule's very purpose by coercing compliance with discovery rules to secure Craig's financial information necessary to determine his income for maintenance computation. See *Kubicheck v. Traina*, 2013 IL App (3d) 110157, ¶ 43.

¶ 66    In light of the record demonstrating Craig's failure to comply with discovery requests and corresponding court orders, the circuit court did not err by awarding Lori $7935 in attorney fees.

¶ 67                    D. Denial of Motion to Reopen Evidence

¶ 68    Finally, Craig argues that the circuit court also abused its discretion by denying his motion to reopen evidence. According to Craig, the court erred by refusing to afford him an additional opportunity to call an expert witness to analyze his tax returns for the purpose of providing a complete and truthful representation of his income for maintenance computation.

¶ 69    Trial courts should consider three factors when weighing a party's motion to reopen proofs, which include "whether (1) there is some excuse for the failure to introduce the evidence at trial, (2) the adverse party will be surprised or unfairly prejudiced by the new evidence, and

21

(3) there are cogent reasons to deny the motion." *In re Marriage of Liszka*, 2016 IL App (3d) 150238, ¶ 64. The denial of a motion to reopen proofs is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion. *In re Marriage of Sawicki*, 346 Ill. App. 3d 1107, 1120 (2004).

¶ 70     Here, the circuit court exercised its sound discretion to deny Craig's motion to reopen evidence. First, the requested relief does not seek to introduce new evidence, but rather requests an opportunity to call an expert witness to clarify any inaccuracies of maintenance computation based on Craig's tax information which was *already established in the record*. Such a request to rehash previously introduced evidence stands antithetical to the principle of finality that a denial of a motion to reopen evidence seeks to promote. See *In re Marriage of Holder*, 137 Ill. App. 3d 596, 603 (1985).

¶ 71     Craig's request to reopen evidence came after the submission of the case and following the court's entry of its order ruling on the parties' outstanding issues, but prior to the judgment for dissolution of marriage. Craig had ample opportunity in the pretrial discovery stage to clarify any uncertainties concerning his income. Craig then had the obligation of gathering and introducing evidence of his income when presented with the adequate opportunity to do so at trial. See *In re Marriage of McCartney*, 116 Ill. App. 3d 512, 515 (1983). We cannot condone the practice of failing to fully disclose financial resources when that information is essential to the trial court's equitable determination of maintenance. See *In re Marriage of Lehr*, 217 Ill. App. 3d 929, 938 (1991). The aim of pretrial discovery is full disclosure between the parties in efforts " 'to enhance the truth-seeking process, to enable attorneys to better prepare for trial, to eliminate surprise and to promote an expeditious and final determination of controversies in accordance with the substantive rights of the parties.' " *Dameron v. Mercy Hosp. & Med. Ctr.*,

2020 IL 125219, ¶ 18 (quoting *D.C. v. S.A.*, 178 Ill. 2d 551, 561 (1997)). The circuit court's denial of the motion to reopen evidence prevents an undeserved windfall of income reassessment when Craig failed to meaningfully participate in discovering this information. Similarly, it prevents Craig from benefitting from his failure to introduce his complete and truthful income situation at trial. See *In re Marriage of Suarez*, 148 Ill. App. 3d 849, 858 (1986).

¶ 72       Furthermore, as the court's November 16, 2021, order denying Craig's motion correctly points out, Craig's motion failed to provide an adequate reason as to why additional expert testimony could not have been timely introduced at trial. Indeed, Craig's motion is devoid of any reason why additional expert testimony, or any new information deduced therefrom could not have been presented at trial. Regardless of the veracity of Craig's assertion that the failure to offer expert accounting testimony satisfied the relevant factors (*i.e.*, whether excluding this expert testimony was not intentional, would not result in prejudice to Lori, and is of the utmost importance to this case), this analysis misses the mark. While true that the court adopted Lori's income chart, the record reflects it reviewed all exhibits and pertinent testimony offered at trial prior to setting the monthly maintenance award. As such, there is no new evidence Craig seeks to introduce.

¶ 73       Finally, we note that, at the conclusion of the December 9, 2020, trial hearing, Craig's counsel brought forth the possibility of producing an accountant's opinion as to the parties' 2019 taxes. The court did not object. However, no expert opinion was produced at the following trial date. This context further highlights Craig's failure to meet his burden to explain why the additional expert testimony he requested was not produced at trial. See *Sawicki*, 346 Ill. App. 3d at 1120.

¶ 74     Accordingly, we find the circuit court's denial of Craig's motion to reopen evidence was not an abuse of discretion.

¶ 75                              III. CONCLUSION

¶ 76     For the foregoing reasons, we affirm the judgment of the circuit court of Tazewell County.

¶ 77      Affirmed.